**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

S.M.H.,

Petitioner,

v.

Christopher McGregor, et al.,

Respondents.

No. CV-26-00620-PHX-MTL (JZB)

**ORDER**

Petitioner filed a Petition for Writ of Habeas Corpus (Doc. 1), challenging his re-detention after the government revoked his humanitarian parole. The Petition is fully briefed. (Docs. 9, 12.)

**I.**

Petitioner is an Afghan national who entered the United States in February 2024 at a port of entry in California. (Doc. 1 ¶ 1; Doc. 1-3 at 5.) When Petitioner presented himself at the port of entry, he was "determined to be inadmissible[] and given a Notice to Appear." (Doc. 1-3 at 5.) Petitioner was "paroled into the United States to seek asylum," after which Petitioner's removal proceedings were terminated without prejudice "due to the fact that [Petitioner] could not understand the sole interpreter available nationwide for his native language." (Doc. 1 ¶¶ 1, 3.) Petitioner filed an asylum application, which remains pending. (*Id.* ¶ 4.) Petitioner's humanitarian parole was set to expire on February 2, 2026. (*Id.* ¶¶ 25, 63; Doc. 1-3 at 3.)

On December 16, 2025, Petitioner was re-detained, issued a new Notice to Appear,

and placed back in removal proceedings. (Doc. 1 ¶ 5.) In his new Notice to Appear, Petitioner was classified as an "arriving alien." (Doc. 1-3 at 18.) Petitioner alleges that he should have been provided with a pre-deprivation hearing, that his detention violates his due process rights under the Fifth Amendment, and that his detention violates the Administrative Procedure Act ("APA") because his humanitarian parole was "unilaterally canceled." (Doc. 1 ¶¶ 6, 8-9.)

## II.

Respondents do not dispute that Petitioner was "granted parole into the United States for two years from the date he was initially released." (Doc. 9 at 2.) Respondents argue, however, that Petitioner was deemed an "arriving alien" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), even considering that he was initially granted parole, and his parole was "properly revoked." (*Id.* at 2-3, 3 n.2.) Respondents also argue that the decision to revoke Petitioner's parole is not "reviewable by this Court." (*Id.* at 3.) Respondents conclude that Petitioner was therefore not entitled to a pre-deprivation hearing and is also not entitled to a bond hearing now. (*See id.* at 3-8.) The Court agrees.

## A.

First, Petitioner was not entitled to a hearing before being re-detained. Under 8 U.S.C. § 1182(d)(5), the "Secretary of Homeland Security may . . . in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." Aliens paroled under this section are not deemed admitted and "when the purposes of [the] parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien *shall* forthwith return or be returned to the custody from which he was paroled" and "his case shall continue to be dealt with in the same manner as that of any other applicant for admission." *Id.* (emphasis added).

The Ninth Circuit has explained that there is "no substantive liberty or property interest . . . in temporary parole status." *Wong v. United States*, 373 F.3d 952, 968 (9th Cir. 2004), *abrogated on other grounds as stated in Pettibone v. Russell*, 59 F.4th 449, 452-53

(9th Cir. 2023). "The INA does not create any liberty interest in temporary parole that is protected by the Fifth Amendment," but instead "makes clear that whether and for how long temporary parole is granted are matters entirely within the discretion of the Attorney General." *Id.* And as the Supreme Court has explained, the "procedural component of the Due Process Clause does not protect everything that might be described as a 'benefit.'" *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005). For example, "a benefit is not a protected entitlement if government officials may grant or deny it in their discretion." *Id.* By its own terms, parole under § 1182(d)(5) is such a benefit that may be granted or denied in the discretion of the Secretary of Homeland Security. Petitioner therefore lacks any interest in maintaining his parole that is protected by the Due Process Clause and that would require the government to provide him with a hearing before terminating parole.

Moreover, aliens who arrive at a port of entry—"even those paroled elsewhere in the country for years pending removal"—are "not considered to have entered the country" but are "treated for due process purposes as if stopped at the border." *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139 (2020) (quotation marks omitted). Such aliens have "only those rights regarding admission that Congress has provided by statute," and the "Due Process Clause provides nothing more." *Id.* at 140. As the Supreme Court has long held, in these circumstances "the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, *are* due process of law." *Id.* at 138 (emphasis added) (citation omitted). Petitioner was not entitled to anything beyond the process provided him under the INA before being re-detained. *See Angov v. Lynch*, 788 F.3d 893, 898 (9th Cir. 2015) (rejecting that an alien's "constitutional right to procedural due process" was violated because the alien "never formally entered the United States" and thus "ha[d] no such right").

**B.**

Second, to the extent Petitioner seeks such relief, Petitioner is not entitled to a bond hearing while he is currently in custody.[1] When Petitioner presented himself for inspection

---

[1] The Petition focuses on the claims that Petitioner should have been afforded a pre-deprivation hearing and that cancellation of Petitioner's parole violated the Administrative

- 3 -

at a port of entry, he became an "arriving alien" and an "applicant for admission." *See* 8 U.S.C. § 1225(a)(1) (stating that an "alien . . . who arrives in the United States (whether or not at a designated port of arrival . . . ) shall be deemed . . . an applicant for admission"); 8 C.F.R. § 1.2 (defining an "arriving alien" as an "applicant for admission coming or attempting to come into the United States at a port-of-entry"). His status as an arriving alien did not change when he was granted parole, nor did it change when his parole was revoked. *See* 8 U.S.C. § 1182(d)(5) (stating that "parole of such alien shall not be regarded as an admission of the alien"); 8 C.F.R. § 1.2 (stating that an "arriving alien remains an arriving alien even if paroled pursuant to [8 U.S.C. § 1182(d)(5)], and even after any such parole is terminated or revoked").

Applicants for admission who are found "not clearly and beyond a doubt entitled to be admitted . . . shall be detained." 8 U.S.C. § 1225(b)(2)(A). Aliens classified under § 1225(b)(2)(A) are not entitled to a bond hearing. *See Chavez v. Noem*, No. CV-26-00323-PHX-MTL (JFM), — F. Supp. 3d —, 2026 WL 381618, at *2 (D. Ariz. Feb. 9, 2026); *see also Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 499 (5th Cir. 2026) ("Section 1225(b)(2) does not include any exception that permits the government to release detained aliens on bond."). Here, Petitioner was deemed inadmissible when he presented himself at the port of entry (Doc. 1-3 at 5), so he was not found "clearly and beyond a doubt entitled to be admitted," 8 U.S.C. § 1225(b)(2)(A). Petitioner was therefore properly classified as subject to mandatory detention.

The Court rejects Petitioner's reliance on the decision in *Bautista v. Santacruz*, — F. Supp. 3d —, 2026 WL 468284 (C.D. Cal. Feb. 18, 2026). (Doc. 12 at 3 & n.2). The *Bautista* court purported to vacate *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025), a Board of Immigration Appeals ("BIA") decision holding that Immigration Judges lack jurisdiction to provide bond hearings to applicants for admission. *See Bautista*, — F. Supp. 3d —, 2026 WL 468284, at *10. The Ninth Circuit has stayed this order pending

Procedure Act, 5 U.S.C. § 706(2)(A). (*See* Doc. 1 at 19.) But the Court nevertheless addresses entitlement to a bond hearing while in detention because the parties briefed the analysis underlying application of § 1225(b)(2)(A). (*See* Doc. 9 at 3-6; Doc. 12 at 3-4.)

- 4 -

appeal because, as the court reasoned, the government established a "likelihood of success on its position that the district court lacked jurisdiction to vacate the BIA's decision in *Yajure Hurtado*." *Bautista v. Exec. Off. for Immigr. Rev.*, No. 25-7958 (9th Cir. Mar. 31, 2026). Regardless, as explained above, the Court agrees with Respondents that Petitioner is properly classified as subject to mandatory detention.

## C.

Finally, the Court agrees with Respondents that the Court lacks jurisdiction to review the decision to terminate Petitioner's parole and that Petitioner was provided with all the process he was owed in terminating that parole. "[N]o court shall have jurisdiction to review" any "decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security . . . ." 8 U.S.C. § 1252(a)(2)(B)(ii). The Ninth Circuit has held that a district court "properly reject[s] [the] argument that it [has] jurisdiction to review the revocation of advance parole" under 8 U.S.C. § 1182(d)(5). *See Hassan v. Chertoff*, 593 F.3d 785, 789-90 (9th Cir. 2010) (per curiam); *see also Vazquez Romero v. Garland*, 999 F.3d 656, 665 (9th Cir. 2021) ("[T]he jurisdiction-stripping provision of § 1252(a)(2)(B)(ii) applies to discretionary parole decisions under § 1182(d)(5)."); *Torres v. Barr*, 976 F.3d 918, 931-32 (9th Cir. 2020) (en banc) ("[T]he parole authority under [8 U.S.C. § 1182(d)(5)] of the [INA] is delegated solely to the Secretary of Homeland Security . . . ." (third alteration in original) (quotation marks omitted)). Indeed, § 1182(d)(5) (emphasis added) provides that an alien previously granted parole must be returned to custody "when the purposes of such parole shall, *in the opinion of the Secretary of Homeland Security*, have been served." Additionally, the APA—which is the basis for Petitioner's claim that his parole was unlawfully cancelled (Doc. 1 at 19)—states that it does not apply to "statutes [that] preclude judicial review" or to "agency action [that] is committed to agency discretion by law." 5 U.S.C. § 701(a); *see also Padilla v. Bondi*, No. CV-24-00332-TUC-JCH, 2025 WL 2663010, at *5 (D. Ariz. Sep. 17, 2025) (stating the "Court does not have the jurisdiction to review the denial of Plaintiff's advance

parole application" and citing 5 U.S.C. § 701(a) and 8 U.S.C. § 1252(a)(2)(B)); *Syed v. Mayorkas*, No. 3:23-cv-00083-IM, 2023 WL 6596330, at \*3 (D. Or. Oct. 10, 2023) ("Because the decision to parole Plaintiff into the United States is discretionary under § 1182(d)(5), the INA and APA prevent this Court from reviewing the USCIS's decision.").

Petitioner essentially requests the Court to review the discretionary decision that the purposes of Petitioner's parole had been served. (*See* Doc. 1 ¶ 64; Doc. 12 at 4 n.3.) The Court lacks jurisdiction to do so.[2]

The Court also rejects Petitioner's challenge that he did not receive sufficient process regarding his parole termination. Petitioner cites a regulation requiring that parole "be terminated upon written notice to the alien," arguing that his parole was improperly revoked without explanation (*see* Doc. 1 ¶ 64), but as Respondents note (Doc. 9 at 6 n.4), this same regulation states that "[w]hen a charging document is served on the alien, the charging document will constitute written notice of termination of parole." 8 C.F.R. § 212.5(e)(2)(i). By serving Petitioner with a Notice to Appear (*see* Doc. 1-3 at 18-21), Petitioner was given the written notice due to him under the regulation. *See United States v. Albino-Loe*, 747 F.3d 1206, 1211 (9th Cir. 2014) ("A Notice to Appear, like a complaint in a civil case or an indictment in a criminal case, is . . . a charging document.").[3]

[2] The Court notes that, even if Petitioner were correct that the reason he was granted parole—to pursue asylum—was not fulfilled at the time his parole was revoked, this would not preclude the Secretary of Homeland Security from terminating his parole. *See Gonzales-Gandini v. Holder*, 384 F. App'x 658, 659 n.4 (9th Cir. 2010) (per curiam) ("Contrary to Gonzales's contentions, the regulation permits termination of parole on notice even if the purpose for which the advance parole was granted—here, to pursue adjustment of status—has not been fulfilled."). Petitioner has not argued that the Secretary could not have concluded that "public benefit [did not] warrant[] the continued presence of the alien in the United States," which is an independent ground for terminating parole. 8 C.F.R. § 212.5(e)(2)(i); (Doc. 12 at 4 n.3 (simply arguing that the "purpose of the humanitarian parole has therefore not been met")). Further, Petitioner does not address that his parole was set to expire less than two months after he was re-detained and, according to the Petition (filed three days before his parole was set to expire), his affirmative asylum application remained pending. (Doc. 1 ¶ 4.) By Petitioner's logic, he could not have lawfully been detained on the day his parole expired because his purpose of parole— seeking asylum—had not been fulfilled. Petitioner provides no legal authority that would justify such a result.

[3] Although the Notice to Appear is dated three days after Petitioner was arrested (*compare* Doc. 1 ¶ 5, *with* Doc. 1-3 at 18), Petitioner does not argue that this mere three-day difference caused the alleged APA violation.

**III.**

Accordingly,

**IT IS ORDERED** that the Petition (Doc. 1) is **denied**. The Clerk of Court is directed to enter judgment accordingly and close this case.

Dated this 14th day of April, 2026.

Michael T. Liburdi
United States District Judge

- 7 -